**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARK GIBNEY, et al.,** | : | **Case No. 2:10-CV-00708** |
| | : | |
| **Plaintiffs,** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **v.** | : | |
| | : | |
| **STATE FARM FIRE & CASUALTY CO.,** | : | **Magistrate Judge Elizabeth Deavers** |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on Defendant State Farm Fire & Casualty Company's ("State Farm") Motion for Summary Judgment with respect to all claims brought against it by Plaintiffs Mark Gibney and Brenda Gibney, as well as Intervenor Plaintiff, PNC Bank N.A. ("PNC"). (Dkt. 39.) Plaintiffs seek to recover based on Defendant's denial of a claim made under their insurance policy with Defendant. For the reasons set forth herein, Defendant's Motion is **GRANTED** in part and **DENIED** in part.

Additionally, Intervenor Plaintiff, PNC, has brought a Motion to Strike Defendant's arguments for summary judgment on PNC's claims. PNC also requests, in the alternative, additional discovery and leave to file a Sur-Reply. For the reasons set forth herein, Intervenor Plaintiff's Motion to Strike is **DENIED**, its request to file a Sur-Reply is **GRANTED**, and its request for additional discovery is **DENIED**.

## II.  BACKGROUND

### A.  Factual History

### 1.  Conflicting Accounts Regarding the July 3 Fire

State Farm issued Homeowner's Insurance Policy No. 35-BH-C787-0 to Gibney for the property located at 7729 Roberts Road, Hilliard, Ohio 43026 (the "Property"), effective July 23, 2008 through July 23, 2009 (the "Policy,").[1]  On July 3, 2009, a fire occurred in the Gibneys' residence, located at the Property (the "July 3 Fire" or "the fire").  The July 3 Fire caused fire, smoke and water damage to the Property, rendering it uninhabitable.  (Raker Decl, ¶ 5.)  Gibney promptly filed a claim with State Farm.  (*Id.*)  State Farm opened an investigation as per its standard protocol.

In the course of State Farm's investigation, various members of  Gibney's extended family testified under oath that  Gibney reported multiple and contradicting versions of the events surrounding the July 3 Fire.  In some versions Gibney allegedly told them, he was asleep when the fire started, in others he dropped a pan of boiling grease on the floor, and in others he did not learn of the fire until after he was at a hospital to visit his grandson.   According to Julie Lively, Gibney's daughter-in-law, Gibney originally stated that he fell asleep while cooking chicken wings, smelled smoke, and called the fire department. [2]  (4/15/10 Lively EUO. at pp. 19-

---

[1] The Policy contained coverage for the residence in the amount of $1,599,066.00 and coverage for contents in the amount of $1,199,325.  (*See* Policy, Raker Decl. Exh. A, Dkt. 40-1.)

[2] Immediately following the July 3 Fire, the Norwich County Fire Department conducted an investigation.  On July 4, 2009 at 12:25 a.m., Lively provided a "Statement of Witness" to the fire department.  (4/15/10 Lively EUO, pp. 9-10 and Exhibit A thereto.)  According to Lively's statement immediately following the July 3 Fire: (1)  Gibney initiated a call to his family from a pay phone; (2)  Gibney claimed he had fallen asleep on the couch while cooking chicken; and (3)  Gibney smelled smoke and called the fire department.  (*Id.*; *see also* 4/15/10 Lively EUO at pp. 10-24.)  Benjamin Gibney, the Gibneys' grandson, confirmed in his statement to firefighters  that  Gibney told him that he fell asleep around the time of the July 3 Fire.  (4/15/10 Benjamin Gibney EUO at pp. 6-9.)

21.)  Later that night, Lively testifies, Gibney stated that he dropped the pan on the floor, which started a fire that rapidly grew too large for him to extinguish.  (*Id.* at pp. 22-23.)

In Gibney's deposition and his examination under oath, he testified that he was home alone on the evening of July 3, not long before the fire was discovered.  (2/17/10 Gibney EUO, p. 155.)  Gibney reported that he was cooking chicken wings on the stove.  (*Id.* at pp. 158-61, 166-68.)  Gibney stated that after he began heating the grease, he received a call from his ex-wife, Gibney, who was at Children's Hospital.  (*Id.* at pp. 157-58, 176;  Gibney Depo., pp. 119-22.)  Gibney testified that Gibney advised that the Gibneys' grandson was in poor medical condition, and Gibney should come to the hospital immediately.  (2/17/10  Gibney EUO, pp. 157-58, 176.)  In response to her call, as Gibney described, he immediately left the Property and locked the door to the residence.  (*Id*. at pp. 157-59, 166, 171, 260.)   Gibney further testified that, when he arrived at the hospital, he realized he may have left the boiling grease on the stove.  (*Id.* at pp. 159-60.)  He then called the fire department and told them that he may have set his house on fire.  (*Id.* at pp. 159-60, 174-75.)

### 2.  State Farm's Investigation of the July 3 and July 25 Fires

On July 25, 2009, while State Farm was in the process of investigating and adjusting the July 3 Fire, Gibney reported that a second fire had occurred overnight at the Property (the "July 25 Fire").  (Raker Decl., ¶ 6.)  Gibney admits that no one was living at the Property at the time of the second fire.  (2/17/10 Gibney Exam. Under Oath, pp. 180-83, 226-31.)  He speculated that the July 25 Fire had an electrical cause, and he reported that the Property was a total loss after the July 25 Fire.  (Raker Decl., ¶ 6; 2/17/10 EUO at pp. 230-31; Gibney Depo., pp. 137-38.)  On

August 13, 2009, State Farm sent a Reservation of Rights letter to Gibney advising him that State Farm was reserving all rights to deny coverage.  (Raker Decl. ¶ 7, Exh. B.)[3]

State Farm retained origin and cause expert Scott Bennett to investigate the origin and cause of both the July 3 Fire and the July 25 Fire.  (Bennett Depo. at pp. 18-19, 119.)  On November 30, 2009, Bennett issued an Origin and Cause Report relating to the July 25 Fire.  (*Id.*, Exh.C.)  In his November 30, 2009 Report, Bennett explained that flooring samples tested positive for the ignitable liquids styrene, alpha-methylstyrene, and turpentine.  (11/30/09 Origin and Cause Report, p. 4.)  Bennett concluded that the cause of the July 25 Fire was "undetermined" but "suspicious."  (*Id.* at p. 5; Bennett Depo. at pp. 87-91.)

On May 15, 2010, Bennett issued an Origin and Cause Report relating to the July 3 Fire.  (Bennett Depo. at p. 119 and Exh. D thereto.)  In his Report, Bennett found that despite Gibney's claim that the July 3 Fire started because he left a stove on while heating grease, the July 3 Fire actually "originated on or at the kitchen island, which was not attached to the stove."  (5/15/10 Report at p. 3, Dkt. 39-3, at 27.)  He further concluded that "[t]he electric stove was neither on, nor in operation, when the fire department arrived," and that the July 3 Fire was caused by "a human act."  (*Id.*)  At his deposition,  Bennett clarified that the cause of the July 3 Fire was an "intentional human act."  (Bennett Depo. at pp. 129-36.)

On July 22 and July 30, 2010, State Farm advised Gibney that it was denying his claim relating to the July 3 Fire.  (Raker Decl. ¶ 12.)  State Farm advised Gibney that he had breached the Policy's "Concealment or Fraud" condition for coverage (the "Condition").  (*See* Policy, *id.* Exh. D. at 04372.)  State Farm added that, based upon Plaintiff's breach of the Condition, State Farm was retroactively voiding the Policy as of July 3, 2009 at 12:01 a.m.  (*Id.* at 04372.)  State

---

[3] In the letter State Farm reminded Gibney that the Policy would be "void" if he misrepresented material facts in the course of State Farm's investigation.  (*Id.* at 02268.)

Farm further explained that because it was voiding the Policy as of July 3, 2009, Plaintiff would have "no coverage with State Farm" for any claims for loss after that date.  (*Id.* at 04373.)

Gibney reported that, on November 29, 2009, an alleged theft of contents in his barn occurred, and he made a claim under the Policy for this loss.  (2/17/10 Gibney EUO, pp. 261-62, 272.)  Since State Farm declared the Policy void as of the July 3 date of loss, State Farm also denied coverage for the alleged theft loss.  (Raker Decl., ¶ 13.)

### 3.  Gibney's Amnesia Defense

Plaintiffs maintain that Gibney did not intentionally set the July 3 Fire, and explain that his "limitations" in recounting consistently the cause of the July 3 Fire are due to the "amnesia" he suffers as a result of a head injury he sustained in a 1996 car accident.  (2/17/10 Gibney EOU at 42.)  Gibney's head injury causes him to appear intoxicated when he is not (*id.* at 206-07); affects his speech (Bennett Depo. at 35-36); and, according to his family's testimony, Gibney has memory issues and behaves as though "he's kind of not always there."   (B. Gibney EOU, p. 28-29, 33.)  The Plaintiffs insist that despite Gibney's limitations, in his testimony, examinations, and depositions, he has consistently related the material facts surrounding the July 3 Fire.

### B.  Procedural History

On July 2, 2010, Plaintiffs filed the present lawsuit against State Farm in the Franklin County Court of Common Pleas, which was later removed to this Court on August 9, 2010, under diversity jurisdiction.  (*See* Dkt. 1.)  Plaintiffs' Amended Complaint makes three claims: (1) State Farm breached the Policy by denying Gibney's claims for loss (Am. Compl., Doc. 9, ¶¶ 10-11); (2) State Farm acted in bad faith by denying Gibney's claims for loss (*id.* at ¶¶ 12-14); and (3) State Farm waived its right to void the Policy and was estopped from asserting a lack of coverage (*id.* at ¶¶ 15-22).  State Farm denies each of these claims.

PNC, Intervenor Plaintiff, claims that as the owner and servicer of the mortgage executed by Gibney on the Property, it is a joint loss payee on the Policy under the "Mortgage Clause" of the Policy. (PNC Compl. ¶ 1, 4; *see* Policy § 10(a).) As of the date of this Opinion and Order, Mark Gibney is in default on his obligations under the note and mortgage executed in favor of PNC's predecessor in interest, National City Bank. (PNC Compl. ¶ 7.) On March 26, 2012, PNC, as the loan servicing agent, filed a foreclosure action in the Franklin County Court of Common Pleas (the "Foreclosure Action," Case No. 10-CVE-12-18569, *see* Dkt. 46-4). The Foreclosure Action has been stayed pending the outcome of this action. (PNC Compl. ¶ 9.) Even though State Farm voided the Policy effective July 3, 2009, it nevertheless paid PNC Bank $190,402.66 under the Mortgage Clause for loss resulting from the July 3 Fire.

On February 8, 2012, PNC moved to intervene in this action on the Plaintiffs' side, as an interested party, under Fed. R. Civ. P. 24. (Dkt. 35.) On February 29, 2012, prior to PNC intervening, State Farm moved for summary judgment with respect to Plaintiffs' claims. On March 6, 2012, Magistrate Judge Abel granted PNC's request for intervention, as it holds a note and mortgage on Plaintiff's property, and is a designated loss payee on the insurance policy at issue in this case. (Dkt. 41.) PNC filed an Intervening Complaint on March 26, 2012. (Dkt. 46.) In it, PNC alleges it has a separate contractual agreement with State Farm pursuant to the Policy's "mortgagee clause," which grants the mortgagee (PNC) a separate right to payment under the Policy. (*See* PNC Opp, Dkt. 45, at 3.) Also on March 26, 2012, PNC filed its own opposition to State Farm's Motion for Summary Judgment, arguing that "even if State Farm is awarded summary judgment against Mark and Brenda Gibney, which PNC believes is inappropriate given the record evidence, such a ruling should not affect PNC's claims against State Farm." (*Id*. at 4.)

On April 2, 2012, State Farm filed its Answer to PNC's Intervening Complaint. (Dkt. 48.) On April 9, 2012, State Farm filed its Reply to its Motion for Summary Judgment. (Dkt. 49.) In its Reply, State Farm raises two new arguments for summary judgment on PNC's claims: (1) that PNC's claims are time-barred, and (2) PNC's claims for coverage fail because State Farm was authorized to void the Policy in full. (*See* Reply to MSJ, at 1.) On May 31, 2012, PNC filed a Motion to Strike State Farm's newly-raised arguments for summary judgment as raised in State Farm's Reply. PNC's Motion, in the alternative, requests leave to file a sur-reply, *instanter*. (*See* PNC's Exhibit Sur-Reply, Dkt. 51-1.) Finally, PNC's Motion requests that, "should this Court find that the arguments in PNC Bank's Sur-reply alone insufficient to deny State Farm's motion for summary judgment," the Court stay its decision on State Farm's motion for summary judgment to permit PNC to undertake limited additional discovery for a fair opportunity to justify its opposition to summary judgment.

Both State Farm's motion for summary judgment and PNC's motion to strike are now ripe for adjudication.

### III. STANDARD OF REVIEW

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and the burden is on the movant to establish that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel*, *Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). Summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-

moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Sixth Circuit has noted that "[u]pon a motion for summary judgment, the district court is not to make credibility determinations or weigh the evidence," *Adams v. Maetiva*, 31 F.3d 375, 384–86 (6th Cir. 1994). Rather, "[i]t is for the jury, not the court, to decide whose version of events to believe . . . ." *Id.*

To survive summary judgment, the non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993). A genuine issue of material fact exists "when there is sufficient evidence for a trier of fact to find for the non-moving party." *La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 335 (6th Cir. 2010); *see also Westco Group, Inc. v. K.B. & Assocs.*, 128 F. Supp. 2d 1082, 1086 (N.D. Ohio 2001) ("A factual dispute precludes summary judgment only if it is material, that is, if it relates to a matter essential to adjudication.").

## IV. LAW AND ANALYSIS

### A.  Plaintiffs' Claims Against State Farm

#### 1.  Breach of Contract Claim for State Farm's Refusal to Provide Coverage

State Farm argues that based on the conflicting statements made by Gibney about the July 3 Fire and the evidence from its investigation that conflicts with Gibney's testimony, State Farm was reasonably justified to conclude that Gibney violated the Policy's "Concealment or Fraud" Condition by intentionally misrepresenting material facts in the course of the investigation. (Policy, p. 19 § 2.) State Farm claims that under the Policy's express terms, State Farm was authorized to void retroactively the Policy upon Gibney's violation of the Condition. (*Id.* §§ 2, 6

(top).)  Thus, State Farm argues, it is entitled to summary judgment on Plaintiffs' breach of contract claim as a matter of law.

Plaintiffs argue that State Farm's chief contention, that Gibney has provided inconsistent accounts, is erroneous and misleading because State Farm improperly attributes the accounts of Lively and other witnesses to Gibney.  Plaintiffs contend any inconsistencies between Gibney's testimony regarding the July 3 Fire and that of other witnesses, or the conclusions of State Farm's expert, Scott Bennett, constitute genuine issues of disputed fact for trial.  PNC joins in Plaintiffs' opposition to summary judgment on their breach of contract claim as a joint payee, arguing that State Farm's "material misrepresentation" defense to Mark and Brenda Gibney's claims would require the resolution of numerous factual disputes on which there are genuine issues for trial.  In particular, PNC raises the following genuine issues of material fact preventing the success of State Farm's motion for summary judgment on this claim:

> (**1**) the credibility of various witnesses upon whose statements State Farm relies;
>
> (**2**) the accuracy of statements Mark Gibney made to State Farm that State Farm now contends were inaccurate;
>
> (**3**) the explanation for any alleged inaccuracies in any statement by Mark Gibney, and whether, if inaccurate in some respect, whether such inaccuracy resulted from mistake or poor memory and not from an "intent to mislead"; and
>
> (**4**) the extent to which some statement of Mark Gibney might have actually had an adverse impact on State Farm's investigation of the cause of this fire.

The parties do not dispute the applicability of Ohio law to this action, as it comes to this Court by diversity jurisdiction.  Ohio law recognizes the enforceability of conditions within insurance policies for obtaining coverage, including conditions excluding losses for concealing or misrepresenting material facts or circumstances.  *See Gearing v. Nationwide Ins. Co*. 665 N.E.2d 1115, 1117 (Ohio 1996). ("It is axiomatic that an insurance company is under no

obligation to its insured, or to others harmed by the actions of an insured, unless the conduct alleged of the insured falls within the coverage of the policy."); *see also Smith v. Allstate Indem. Co.*, 304 F. App'x. 430, 432 (6th Cir. 2008) (involving a similar insurer's defense of breach of policy terms and "misrepresentation" conditions on a fire loss claim).

Courts have held that "[t]he insured generally has the burden of demonstrating coverage under the policy and then proving a loss," *Fairfield Mach. Co. v. Aetna Cas. & Sur. Co.*, 2001 Ohio App. LEXIS 5982, at *11 (Ohio Ct. App 2001), however, "once a plaintiff establishes coverage under the insurance policy, the ultimate burden of persuasion is on the insurer to establish the applicability of any exclusion by a preponderance of the evidence."  *Id.* (citing *Evans v. National Life and Acc. Ins. Co.*, 488 N.E.2d 1247, 1252 (Ohio 1986)).

The parties do not dispute the enforceability of the Policy.  The main dispute on the instant motion is whether State Farm has established no genuine dispute as to whether Gibney made "intentional material misrepresentations" in violation of the Policy's conditions.  The Policy's "Conditions" for coverage from losses under Section I (bodily injury) or Section II (property damage) provide, in relevant part:

> **2. Concealment or Fraud.**  This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after the loss.

(Policy, p. 19)  Moreover, the Policy's "Conditions" for coverage from losses under Section II (property damage) further provides, in relevant part:

> **6. Suit Against Us.**  No action shall be brought against [State Farm] unless there has been compliance with the policy provisions.

(*Id.*)

State Farm has produced two evidentiary bases to find breaches of the Conditions by Plaintiffs.  First, State Farm claims that Gibney's conflicting statements in his multiple stories of the July 3 Fire themselves constitute a breach of the Conditions.[4]  Second, State Farm claims that the evidence it discovered in the course of its investigation contradicts the several stories relayed by  Gibney, justifying State Farm's voiding the Policy under the Conditions in the following ways: (1) The photographs taken by the fire department at the time of the July 3 Fire show that all of the burners on the stove were in the "off" position at the time of the July 3 Fire;[5] (2) the evidence demonstrates that  Gibney was not called away from his home due to a medical emergency on July 3, as, according to Lively, on the evening of the July 3 Fire her son was "doing fine," (2/18/10 Lively EUO at 14), and  Gibney was "[j]ust coming for a visit."  (*Id.* at 18.); and (3) Benjamin Gibney testified that it was  Gibney who called the family to tell them he was coming to the hospital, contradicting  Gibney's claim that Brenda Gibney called and summoned him to the hospital.

Plaintiffs, for their part, submit that Gibney has testified to the following consistent version of events the night of the July 3 Fire, as follows:

(1)  Gibney was home alone before the fire, (2/17/10 EOU, at 155:4–9; Depo at 120:10–13);

(2)  Gibney began cooking wings by putting a pot of grease on the stove, (2/17 EOU at 158:20–159:7; 4/15 EOU at 5:13–23; Depo, 107:4–12)

(3)  Gibney received a call from Brenda Gibney regarding an urgent issue concerning their grandson at Children's Hospital, (2/17 EOU at 157:13–23, 4/15 EOU at 18:1–6, Depo at 90:18–20);

---

[4] (*See* Motion for Summary Judgment, at 3) (" Gibney breached this condition to coverage by making multiple material misrepresentations in the course of State Farm's investigation regarding the origin and cause of a fire that occurred on July 3, 2009 and his whereabouts at and around the time of the fire.").

[5] (11/30/09 Origin and Cause Report at 2; 5/15/10 Origin and Cause Report at 2; Bennett Depo., pp. 30-31, 62, 96-98, 123-24.)

(4)  Gibney left his home in haste to respond to Brenda Gibney's call (2/17 EOU at 166:8–12, 4/15 EOU at 15:18–24, Depo at 107:4–12);

(5)  Gibney called the fire department to check on the home, (2/17 EOU at 166:12–15, 4/15 EOU at 5:13–23, Depo at 95:12–15); and

(6) The fire department responded and suppressed the fire, (2/17 EOU at 166:12–19, 4/15 EOU at 5:13–23, Depo at 95:12–15).

(Plaintiffs' Opp. at 2.)

As the record stands, State Farm has not conclusively established that Gibney gave contradicting stories about the cause and origin of the July 3 Fire.  To prove that  Gibney reported contradictory versions, State Farm relies on the testimony of Lively and Benjamin Gibney in which they claim that  Gibney reported the events to them differently than he reported in his testimony.  State Farm contends, for example, that Plaintiffs' "failed to create any disputed issue as to whether Gibney made misrepresentations of his whereabouts at and around the time of the  fire, [or] the fact that he told conflicting stories of the event *to Julie Lively*. . ."  (Reply, at 2) (emphasis added).  Lively's second-hand testimony of Gibney's allegedly inconsistent account is insufficient to warrant summary judgment for State Farm, because the veracity of her testimony is a fact question for the jury.  The jury is free to accept or reject Lively's testimony, and if the fact-finder rejects their testimony, Gibney's testimony is itself reasonably consistent.  Thus, contrary to State Farm's assertion, the credibility of Lively's account itself creates is a triable issue of fact which bears on whether Gibney did indeed render inconsistent versions of events.

Second, State Farm fails to show that the record evidence conclusively establishes that Gibney's testimony about the July 3 Fire is false.  Plaintiffs' chemical fire expert, Dr. David Manuta, concludes in his report that Bennett performed an "incomplete investigation of the [July 3 Fire]," (Manuta Report at 8), and that a failure in the electric stove's "infinite switch" is a

"credible/plausible explanation for this fire," which Plaintiffs argue is consistent with Gibney's testimony.  (*Id.* at 2.)  Although State Farm insists that "Plaintiffs' expert's 'flying chicken wing' story will not ultimately survive a *Daubert* motion," it acknowledges, "that is not an issue for this motion."

Since Plaintiffs' expert opines that Gibney's version of events is plausible, a material issue of fact exists as to whether Gibney has materially misrepresented the cause of the July 3 Fire.

While State Farm's evidence that Gibney made material misrepresentations in the course of its investigation is compelling, on summary judgment Gibney "is given the benefit of *all* favorable inferences that can be drawn therefrom."  *Smith v. Allstate Ins. Co*., No. 05-cv-329, 2006 U.S. Dist. LEXIS 93998, at *24 (S. D. Ohio 2006) (emphasis added).  A jury could reasonably choose to believe Gibney's version of the events of the July 3 Fire, as given in his EUO and his deposition, and reject the credibility of the other witnesses' testimony that Gibney gave other conflicting versions of the story.  Moreover, the evidence against Gibney's account of the fire starting on the stove when he left grease cooking is not sufficiently conclusive to preclude a triable issue, particularly given the expert testimony of Dr. Manuta, in support of the plausibility of Gibney's story.

Even if, *arguendo*, the evidence establishes that Gibney made some misrepresentations as to how the July 3 Fire started, under Ohio law, in the insurance context "[t]he materiality of a misrepresentation is a mixed question of law and fact that *under most circumstances should be determined by the trier of fact*."  *Abon Ins. Co. v. Transcon Ins. Co.*, 2005-Ohio-3052, ¶ 82 (Ohio App. Ct. 2005) (citing *Turley v. State Farm Mut. Auto. Ins. Co.*, 944 F.2d 669, 672 (10th Cir. 1991)) (emphasis added).  Materiality of an insured's misrepresentations "can be decided as a

matter of law if reasonable minds could not differ on the question." *Id.* (internal quotations omitted). For example, State Farm's purportedly conclusive evidence that Gibney called the hospital, contradicting Gibney's claim that he responded to Gibney's call, is not necessarily a "material" misrepresentation, even if the evidence allowed no reasonable inference other than that he lied about receiving a call to come to the hospital.

Finally, though only weakly-supported at this stage, the fact that Gibney does suffer from cognitive trauma, further supports the existence of a triable issue on the "intentional" nature of any misrepresentations he made as well. *See, e.g.*, *Smith v. Hudson*, 600 F.2d 60, 66 (6th Cir. 1979); *see also Ventura v. Cincinnati Enquirer*, No. C-1-99-793, 2002 U.S. Dist. LEXIS 25723, at *21-22 (S.D. Ohio 2002) ("Fraud is often a fact-based inquiry inappropriate for summary judgment.")

Since it is necessary to decide material disputed issues of fact to determine whether Gibney made material misrepresentations in violation of the Conditions, State Farm has not met its burden on summary judgment for Plaintiffs' breach of contract claim. Thus, the summary judgment motion for breach of contract is **DENIED**.

**2. Bad Faith Claim for State Farm's Refusal to Provide Coverage**

State Farm argues summary judgment is appropriate on Plaintiffs' bad faith claim for two reasons: (1) once the Court determines that State Farm is entitled to judgment as a matter law on the breach of contract claim, it must also rule for State Farm as a matter of law on the bad faith claim; and, alternatively, (2) at the very least, State Farm was "reasonably justified," *see Zoppo v. Homestead Ins., infra*, in its decision to deny coverage based on material misrepresentations. Plaintiffs claim that material issues exist as to whether State Farm acted in bad faith "by focusing solely on Mark Gibney, failing to follow-up on alternative causes to the July 3rd fire, and refusing

to honor the Gibney policy only after the July 24th fire at the then-unoccupied residence."

(Plaintiffs' Opp. at 9.)

In Ohio, "an insurer has a duty to act in good faith toward its insured," *Smith*, 2006 U.S.

Dist. LEXIS 93998 at *26, and "an insurer's lack of good faith in processing claims is referred to

as 'bad faith' and gives rise to a cause of action in tort against the insurer." *Id.* (citing *Hoskins v.

Aetna Life Ins. Co.*, 452 N.E.2d 1315, syll. P 1 (Ohio 1983)).  Under Ohio law, "[a]n insurer fails

to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim

is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v.

Homestead Ins. Co.*, 644 N.E.2d 397, 400 (Ohio 1994) (citations omitted).

On a motion for summary judgment, "Ohio law directs courts to assess bad-faith-denial-

of-coverage claims from the perspective of what information motivated the insurer's denial."

*Smith v. Allstate Indem. Co.*, 304 F. App'x. 430, 432 (6th Cir. 2008).  Viewing the evidence in

the light most favorable to the insured, courts must ask "whether 'the claim was fairly debatable

and the refusal was premised on either the status of the law at the time of the denial or the facts

that gave rise to the claim.'" *Id.* (quoting *Tokles & Son, Inc. v. Midwestern Indem. Co.*, 605

N.E.2d 936, 943 (Ohio 1992) (holding, an aggrieved insured must respond to the insurer's

motion "with evidence which tends to show that the insurer *had no reasonable justification for

refusing the claim*, and the insurer either had actual knowledge of that fact or *intentionally failed

to determine* whether there was any reasonable justification . . .") (emphasis added)).

State Farm's first asserted basis for summary judgment on Plaintiffs' bad faith claim fails

because the Court finds that the existence of genuine issues of material fact preclude judgment as

a matter of law on Plaintiffs' breach of contract claim.  On State Farm's second basis, that its

denial of coverage was "reasonably justified," however, State Farm's motion for summary judgment is meritorious, and supports dismissing Plaintiffs' bad faith claim as a matter of law.

State Farm formally decided to deny Gibney's claims for his losses from the July 3 Fire, and voided any subsequent claims under the policy, in its correspondence to Gibney dated July 22 and July 30, 2010. (Raker Decl. at ¶ 12, Exhs. C and D.) State Farm's decision was based on Gibney's breach of the Condition by making material misrepresentations, and the Policy's condition against covering "intentional acts." (*See* Policy, Section I – Conditons, § 12.); (*Id.* Exh. C, at 3–4; Exh. D. at 2.) At that time State Farm sent the aforementioned denial of coverage notices, State Farm had the following evidence, *inter alia*, upon which to rely in determining that Gibney breached the Conditions of the Policy: the sworn testimony of Lively[6] and Benjamin Gibney[7] that Gibney gave contradictory versions of the July 3 Fire, and both Origin and Cause Reports from Bennett concluding that the July 3 Fire was a "human act" and was not caused in the way Gibney claimed.[8]

The available evidence of Gibney's misrepresentations and evidence contradicting Gibney's story from the investigation was sufficient to establish that Gibney's "claim was fairly debatable," and prevent, as a matter of law, a finding that State Farm acted in "bad faith" by denying his claim. *See Smith*, 304 F. App'x. at 432. The "bad faith" arguments and facts here closely match those in *Smith v. Allstate*, where, like State Farm, "Allstate decided to deny coverage using the information available -- especially the investigator's report and witness testimony -- showing a probability that the fire resulted from the intentional act of an insured." *Id.*

---

[6] (*See* 4/15/10 Lively EUO, at pp. 10-24.)

[7] (*See* 4/15/10 Benjamin Gibney EUO at pp. 6-9.)

[8] (Exh. C to Motion for MSJ.)

In *Smith*, the Sixth Circuit upheld summary judgment against plaintiffs' bad faith claim where the defendant insurance company's (Allstate) investigation revealed similar problems with the plaintiffs' claim for fire damage:

> This process disclosed discrepancies about the cause and timing of the fire, the time the fire department arrived, and the true contents of the house. From its investigation, Allstate also learned that the Smiths had a strong financial motive to burn their home and ample opportunity. And most importantly, an outside investigator hired by Allstate determined that an intentional act caused the rekindle.

*Smith*, 304 F. App'x at 431. Similar to State Farm's basis for denial in the case *sub judice*, in *Smith* Allstate denied coverage, "relying on policy provisions excluding: (1) losses resulting from '[i]ntentional or criminal acts of or at the direction of any insured person,' and (2) 'any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance.'" *Id*. The district court granted summary judgment in Allstate's favor on the plaintiffs' bad faith claim, "conclud[ing] that reasonably viewed the claim was 'fairly debatable.'" *Id.* The Sixth Circuit affirmed, holding, that "inconsistent witness testimony and investigators' suspicions about ignition fostered a legitimate belief that Smith's policy excluded her claim," and furthermore "the property-loss claim raised serious doubt about whether she misrepresented her losses, precluding a finding of bad faith as a matter of law." *Id*. at 433.

Here, *Smith*'s holding is directly on point and supports summary judgment in favor of State Farm on the bad faith claim. State Farm reasonably believed that Gibney had breached the Conditions, in light of the "inconsistent witness testimony and investigators' suspicions about ignition." *Id*. Although in *Smith* there was the additional basis of the plaintiffs' inflated losses, the Sixth Circuit expressly held that "[e]ither ground supports the district court's decision to grant summary judgment on the bad-faith claim." *Id.* Even if State Farm's decision was

incorrect, it had a good faith basis supported by its investigation for denying coverage under the

Policy.  Therefore, State Farm did not act in bad faith in denying coverage to the Plaintiffs.  State

Farm's motion for summary judgment on Plaintiffs' claim of bad faith is **GRANTED**.

### 3.  Plaintiffs' Promissory Estoppel Claim

State Farm also moves for summary judgment on Plaintiffs' promissory estoppel claim,

which alleges that State Farm waived its right to void the Policy and should be estopped from

asserting a lack of coverage.  Plaintiffs contend State Farm's conduct following the July 3 Fire

"would lead a reasonable observer to believe it would honor its obligations to pay under the

policy."  (Plaintiffs Opp. at 8; Am. Compl., ¶¶ 15-22.)  State Farm counters that it is entitled to

summary judgment for two reasons:  First, as set forth above, State Farm was entitled to void the

Policy effective July 3 based upon Gibney's multiple material misrepresentations; second, State

Farm appropriately reserved its right to deny coverage in its August 13, 2009 Reservation of

Rights letter.  (Exh. B to Raker Decl.)  Plaintiffs disagree, arguing that State Farm led them to

believe Gibney's claims were covered for three weeks after the July 3 Fire, and only decided to

void the Policy after the July 25 Fire occurred.

In insurance cases under Ohio law, "[t]he doctrine of waiver and estoppel bars an insurer

from denying coverage if the insurer makes a clear misrepresentation as to coverage or if the

insurer provides a defense, without reserving its rights, for a period of time sufficient to

prejudice the insured's ability to conduct its own defense."  *Pasco v. State Auto. Mut. Ins. Co.*,

1999 Ohio App. LEXIS 6492, at *19 (Ohio Ct. App. 1999).  Ohio courts have held, regarding

claims of waiver or estoppel by the insured:

> The insurer has the ability to protect itself against such claims by ensuring that its
> customers receive the coverage they request or by entering a defense of a claim that
> may not be covered by the policy only after reserving its right to raise policy defenses
> at a later time. *Waiver and estoppel should apply only in those cases where there is a*

> *clear misrepresentation of fact or when the insurer provides a defense without reserving its rights for a period sufficient to prejudice the insured's ability to conduct its own defense.*

*Fairfield Mach.*, 2001 Ohio App. LEXIS 5982, at *21 (emphasis in the original) (quoting *Turner Liquidating v. St. Paul Surplus Lines Ins. Co.*, 638 N.E.2d 174, 180 (Ohio Ct. App. 1994)).

State Farm's August 13, 2009 Reservation of Rights letter, sent approximately five weeks after the July 3 Fire, was not untimely or otherwise "sufficient to prejudice the insured's ability to conduct its own defense." *See id.* The possible deficiency with State Farm's Reservation of Rights is that, by its own terms, it pertained to Gibney's claims submitted for the July 25 Fire, only. (*See* Exh. B to Raker Decl., at 2.) Since this is apparently the only reservation of rights provided by State Farm to Gibney, a material issue remains as to whether the Reservation of Rights Letter was effective to reserve State Farm's rights to deny coverage for the July 3 Fire as well. *See Am. & Foreign Ins. Co. v. Sequatchie Concrete Servs.*, 441 F.3d 341, 347 (6th Cir. 2006) ("An insurance company's reservation of rights is sufficient only if it 'fairly informs the insured of the insurer's position.'") (quoting *Transamerica Ins. Group v. Beem*, 652 F.2d 663, 666 (6th Cir.1981)) (Tenn.). Moreover, there is a material issue as to whether the Reservation of Rights sufficiently put Plaintiffs on notice of State Farm's potential denial of Gibney's claims for the July 3 Fire, which became State Farm's basis for voiding the Policy thereafter. Thus, summary judgment on the Plaintiffs' promissory estoppel claim is **DENIED**.

## B. PNC's Motion to Strike and Request to File a Sur-reply and Have Additional Discovery

Before addressing State Farm's summary judgment arguments on of PNC's independent claims, it is proper for the Court to rule on PNC's Motion to Strike, or in the alternative, request to file a Sur-reply and have additional discovery, as those rulings affect the Court's consideration of State Farm's asserted bases for summary judgment against PNC. PNC filed a Motion to

Strike State Farm's newly-raised arguments for summary judgment to PNC's claims as raised in State Farm's Reply.  PNC argues that State Farm's request for judgment regarding PNC Bank's claims is improper, and PNC requests that this Court either:

> 1. strike that portion of State Farm's Reply that seeks judgment in its favor on PNC Bank's claims;
>
> 2. grant PNC Bank leave to file a Sur-reply in response to State Farm's Reply; or
>
> 3. if this Court deems PNC Bank's Sur-reply insufficient to deny State Farm's motion, PNC Bank requests leave to conduct limited discovery pursuant to FRCP 56(d)(2) to respond to State Farm's Reply.

Since PNC was not permitted to intervene until after State Farm had filed its initial Motion for Summary Judgment, State Farm had good cause for raising new arguments against PNC's claims in its Reply.  Prior to the Reply, State Farm lacked notice it needed to make those arguments.  For the same reasons of notice and fairness, PNC has demonstrated good cause to file a Sur-Reply to address the arguments raised by State Farm's Reply.  Otherwise, PNC would not have an opportunity to respond directly to State Farm's arguments in Reply.   In filing a Sur-reply, however, additional discovery is not necessary to aid PNC's opposition.  Since the sole issue on summary judgment against PNC is the validity of the Policy's one-year stipulation of limitations, the Court can resolve the issue as a matter of law without any additional discovery.

PNC has attached its proposed Sur-reply, so no further briefing is necessary.  The Court has taken notice of the Sur-reply in deciding summary judgment on PNC's independent claims.

### C.  PNC's Independent Claims

State Farm argues for summary judgment on PNC's independent claims based on The Policy's "Suits Against Us" provision, which requires actions against it by any insured to be brought within one year after the loss or damage:

> **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

(Policy, Section I, Conditions, 6. p. 14.)

The losses at issue in Plaintiffs' lawsuit occurred in July and November of 2009.  PNC did not move to intervene in the lawsuit until February 8, 2012—two and a half years after the losses, and over one and a half years after Plaintiffs filed their original lawsuit July 2, 2010. PNC asserts in its Sur-reply that its claims are, nonetheless, not barred by the one-year "Suits Against Us" provision for two reasons: (1) First, the clause references an "action," not a "claim," and thus requires only that a complaint be filed within one year; and (2) second, PNC has not yet incurred a "loss or damage," and the Policy requires that the action be commenced within one year after the "date of loss or damage."

The Sixth Circuit has held that under Ohio law, "[a] contract for insurance may lawfully limit the time within which a suit may be commenced on the contract, even though this period is shorter in duration than that of the applicable statute, as long as the limitations period is not unreasonable." *Klein v. State Farm Fire & Casualty*, 250 F. App'x 150, 155 (6th Cir. 2007) (noting, "[a] limitations period requiring commencement of a suit to a period of twelve months is not unreasonable"); *see also Dominish v. Nationwise Insurance Co.* 2011 Ohio 4102 (Ohio 2011) (holding a one-year limitation period unambiguous and not unreasonable).  In fact, in *Klein*, the Sixth Circuit upheld the exact same language that the Policy employs here to bar a claim filed after one year.  *See Klein*, at n.1.  Moreover, "an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations.'" *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010) (quoting *In re Kent Holland Die Casting & Plating, Inc.*, 928 F.2d 1448, 1449 (6th Cir. 1991)).

21

State Farm argues that the governing case is *AmeriTrust Co. Nat'l Assoc. v. West American Ins. Co.*, 525 N.E.2d 491 (Ohio Ct. App. 1987), where the mortgagee brought an action against an insurer to recover as a loss payee under a fire policy covering a mortgaged property, or, alternatively, to recover in tort for punitive damages, premised upon the insurer's alleged bad faith.  On appeal from summary judgment in favor of the insurer, the 8th District Ohio Appeals Court held that: (1) mortgagee, as loss payee, was bound by one-year limitations clause contained in fire policy, despite a lack of the limitations clause in the certificate of insurance issued to mortgagee; (2) insurer was not required to show that it was prejudiced by delay in filing claim in order to enforce one-year limitations clause; and (3) lack of showing of prejudice precluded mortgagee from recovering against insurer for breach of duty of good faith. *AmeriTrust* remains good law in Ohio and does, as State Farm contends, closely track the facts of the instant case.

PNC counters that under *Vogt v. Guardian Royal Exchange*, No. CA91-10-085, 1992 Ohio App. LEXIS 3242, *6 (12th Dist. June 22, 1992), its claims do relate back to the original complaint.  In *Vogt*, the Twelfth Appellate District court held that the mortgagee's late cross-claim was not barred by the policy language because the action was commenced within a one-year period and the insurer received notice of the mortgagee's claim when the complaint was filed.  *Vogt* is distinguishable, primarily because in that case the appellant mortgagee had been named in the action as a defendant at the outset, and merely requested later to be joined as a co-plaintiff.  *Id.* at *6-*7 (concluding, "[t]hus, the complaint and attached insurance policy gave GRE [insurer] timely notice of appellant's interest in claiming the insurance policy proceeds, and appellant was already a party to the action").  Here, PNC was not a previous party to the action and its independent claims were not otherwise noticed to State Farm until after the limitations

period.  Thus, *Vogt* provides PNC with no grounds for the non-applicability of or an exception to The Policy's one-year limitation.

Moreover, PNC's argument that is has not yet incurred a "loss" is not compelling because case law suggests PNC's "loss payable" rights vested at the time of the fire.  *See Barwick v. State Farm Fire & Cas. Ins. Co*., 2011 Ohio 5689, at P. 36 ("[W]here a fire loss occurs and a loss payable mortgagee is thus vested with rights under an insurance policy, subsequent partial or full extinguishment of the debt giving rise to the insurable interest will reduce the loss payable mortgagee's interest in the insurance proceeds to the extent that the debt has been satisfied. (citations omitted)." ).

In sum, State Farm's time limitation is valid and it binds PNC as the mortgagee. Furthermore, PNC's claim does not relate back to the date of the Plaintiffs' original complaint. Even if State Farm was not prejudiced by PNC making its claims more than one and a half years following the initiation of the action, it is still entitled to summary judgment because it need not show actual prejudice from PNC's failure to file timely .

It should also be noted, though the State Farm does not make the argument, that PNC was notified by Plaintiff in a letter on October 11, 2011, that PNC should intervene in the case if it desired to assert its interests.  (Exh. E to PNC Compl.)  Despite that notice, PNC waited nearly four months to intervene, in February 2012.  The Court makes no statement as to whether this delay might constitute a waiver of PNC's claims, but it further demonstrates that PNC lacks a legitimate basis for evading State Farm's one-year limitation.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Summary Judgment on Plaintiffs' First (contract) and Third (promissory estoppel) Claims, but **GRANTS** summary judgment for Defendant on Plaintiffs' Second (bad faith) Claim.

Additionally, the Court **GRANTS** Intervenor Plaintiff leave to file the Sur-reply already submitted to the Court, but **DENIES** its Motion to Strike and its request for additional discovery.

Finally, the Court **GRANTS** Defendant's Motion for Summary Judgment with regard to Intervenor Plaintiff's independent claims.

**IT IS SO ORDERED.**

    **s/ Algenon L. Marbley**
**Algenon L. Marbley**
**United States District Judge**

**Dated: September 25, 2012**